UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-867-H

PHARMACOGENETICS DIAGNOSTIC LABORATORY, LLC   PLAINTIFF

V.

ESSENTIAL MOLECULAR TESTING CORPORATION, LLC – PGXL PARTNERS, LLC

And

SCOTT GOODMAN   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' request for a preliminary injunction/temporary restraining order on their counterclaim regarding the proper interpretation of the payment terms in the underlying agreement between the parties.

On September 6, 2013, Plaintiff, Pharmacogenetics Diagnostic Laboratory, LLC ("PGXL"), filed a complaint against Defendants, Essential Molecular Testing Corporation - PGXL Partners, LLC ("EMTC") and Scott Goodman, EMTC's registered agent, asking this Court to declare the parties' August 1, 2012 Agreement ("Agreement") void *ab initio* because EMTC, the entity named in the Agreement, had not been properly formed as an LLC at the time.[1]

In response, Defendants requested this Court to enter injunctive relief barring Plaintiff from unilaterally changing its method of calculating commissions owed to EMTC under the Agreement. On October 10, 2013, the Court denied Defendants' request for an immediate hearing on the matter and ordered Plaintiff to brief the matter more fully. Plaintiff has complied

---

[1] In the alternative, Plaintiff seeks a declaration that the Agreement is voidable on the theory of fraudulent inducement and/or fraudulent omissions regarding EMTC's legal existence.

and the Court will now assess the claims before it. For the reasons that follow, the Court will deny Defendants' request for injunctive relief.

I.

The facts pertinent to Defendants' request for injunctive relief are detailed below. The Court will not address Plaintiff's claims that an agreement does not exist (Count I) or that fraud infected the parties' dealings (Counts II-III) in the present Order. For purposes of this Order, the Court will assume an agreement exists.

Before PGXL instituted the present action to declare the Agreement between the parties void *ab initio*, or alternatively, voidable due to Defendant Goodman's fraud, PGXL's Executive Vice President of Business Operations, Wendell O'Neal, sent a letter to Scott Goodman dated July 31, 2013 announcing that, effective August 1, 2013, PGXL would change its method of calculating EMTC's monthly commission.

Under the Agreement, EMTC's monthly commission is "50% of the Gross Profits from all testing ordered through EMTC in such month, [but] such amounts shall not become due and payable to Essential Molecular until the payments from those tests are actually received by PGXL (i.e. payment being made for each test upon receipt of revenue for any portion of that test)." The term "Gross Profits" is defined by the Agreement as "revenue derived from testing generated by Essential Molecular…less costs to produce such testing which shall be defined between the Parties and will include [a list of items that does not mention costs of unreimbursed tests]."

The July letter indicated PGXL's plan to eschew the cost per test formula the parties had used from the beginning, whereby the cost per test decreased as the number of tests ordered

increased.[2] PGXL averred that six months of evaluations had revealed "the actual costs per test performed as defined in the agreement is $42.50." PGXL indicated its intention to apply this amount retroactively to all tests serviced in 2013 that were paid for after August 1, 2013, and for *all* tests "ordered and performed"—whether or not PGXL ever received payment—from September 1, 2013 forward.[3] From the inception of the Agreement, PGXL had never deducted the costs for developing unreimbursed tests from revenue in order to calculate the amount it owed EMTC.

On October 2, 2013, PGXL sent an email demonstrating "corrected commission calculation[s]" that retroactively included costs for unreimbursed tests. This resulted in various "overpayments" that PGXL stated it would recuperate against remaining commissions owed to EMTC in 2013.

Defendants now urge this Court to enter an injunction prohibiting PGXL from unilaterally changing the cost per test formula and the method of calculating commissions payable to EMTC and further to prohibit PGXL from retroactively implementing such changes and setting off such costs in payments otherwise owed under the Agreement.

II.

In deciding whether to grant a temporary restraining order and preliminary injunction, the Court considers

> (1) whether the [movant] has a substantial probability of success on the merits; (2) whether the injunction will save the [movant] from irreparable injury; (3) whether

---

[2] The July 31 letter does not expressly eliminate the sliding scale, but the Court construes PGXL's determination of the "actual costs per test" and the bulleted information detailing how this amount would be applied retroactively as indicating its intention to eliminate the scale.

[3] Defendants' most recent pleading indicates that the cost of unreimbursed testing was not included in PGXL's calculation of EMTC's September commission. ECF No. 18, p.12 n.5. This might be explained by PGXL's explanation in its July 31 letter that such costs would be "accounted for at the earlier of either the time when payment is received for the test *or within 60 days following the submission for payment*." ECF No. 11-4, Ex. D.

3

the injunction would harm others; and (4) whether the public interest would be served.

*Milliron v. Louisville & Jefferson Metro. Sewer Dist.*, 867 F. Supp. 559, 563 (W.D. Ky. 1994); Federal R. Civ. P. 65. The factors are not prerequisites that must be satisfied; rather, they are considerations to be balanced that guide the discretion of the court. *Id.* (citing *In re Eagle-Picher Industries, Inc.*, 963 F. 2d 885, 859 (6th Cir. 1992).

Due to the absence of an integration clause in the Agreement, among other factors, the Court is unable to conclude with any conviction that Defendants have a substantial probability of success on their interpretation of the payment provisions. While the interpretation of a contract is a question of law, including questions regarding ambiguity, *see First Commonwealth Bank v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000), it would be difficult now to evaluate the ambiguities definitively. It is enough, at present, to determine that Defendants overstate their case. Though their view is not unreasonable, especially in the light of the language surrounding the definition of revenue and the unqualified provision that "PGXL will be responsible for the costs of test kits…,"[4] it is not conclusive. PGXL, too, makes a strong argument, also pointing to the language of the Agreement, that its "corrections" to its method of calculating Gross Profits represents "enforcement as originally contemplated by the parties."

The second factor also weighs against granting a TRO or preliminary injunction. According to PGXL's October email, the total amount of "overpayments" it made to EMTC in 2013 was $443,508.49. PGXL stated its intention to spread this figure over the next three months, deducting $147,836.16 from the commission it would otherwise owe to EMTC in the

---

[4] The course of performance of the contract also gives strong evidence of the parties' contemporaneous intention as to how Gross Profits would be calculated and seems to support Defendants' interpretation of the payment provisions. Additionally, Defendants aver that a sizable number of EMTC competitors, including Iverson Genetics, AI Biotech, NMTC, Vintari, and Proove BioSciences, do not deduct unreimbursed testing, *see* ECF No. 11-1, Ex. A, ¶ 16. This would suggest a strong usage of trade that supports Defendants' interpretation of the payment provisions.

months of October, November, and December, 2013. ECF No. 11-5, Ex. E. This is a sizable sum and not the only monetary consequence Defendants face.[5] However, as a general rule, irreparable harm does not exist where the damage may be compensated by an award of money damages. *See Transamerica Ins. Fin. Corp. v. North Am. Trucking Ass'n*, 937 F. Supp. 630, 634 (W.D. Ky. 1996). The circumstances here do not warrant invoking the narrow exception recognized by the Sixth Circuit for cases involving "potential economic loss…so great [it] threaten[s] the existence of the movant's business." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995).

Were the Court to accept Plaintiff's argument that granting injunctive relief would "put PGXL's business in jeopardy," the third factor would also weigh against granting Defendants' requested injunction. PGXL complains "the number of tests that are fully reimbursed – or reimbursed at all – has been substantially *lower than projected* over the course of the Agreement's first year and is now projected to continue to fall." However, this indicates that the parties did, in fact, consider the allocation of costs for unreimbursed tests at some point in the negotiation process, presumably at the outset of the agreement. If it turns out that Plaintiff fully assumed the risk for unreimbursed test costs, any harm to its bottom line is immaterial—it must still perform its contractual obligations despite its regret. Ultimately, the Court will rely on the plain language of the Agreement to interpret its provisions. Where the terms are not clear, and because there is no integration clause, the Court will hear evidence on the intention of the parties. All of this is yet to be determined.

Being otherwise sufficiently advised,

---

[5] That is, PGXL's plan, outlined in its July 2013 letter and reiterated in its October 2013 email, will affect all commissions paid to Defendant EMTC in 2012 as well as the amounts of all future commissions owed.

IT IS HEREBY ORDERED that the Defendants' request for injunctive relief (ECF No. 10) is hereby DENIED.

November 8, 2013

John G. Heyburn II, Judge
United States District Court

cc: Counsel of Record