UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-867-H

PHARMACOGENETICS DIAGNOSTIC LABORATORY, LLC        PLAINTIFF

v.

ESSENTIAL MOLECULAR TESTING
CORP, LLC-PGXL PARTNERS, LLC

and

SCOTT GOODMAN        DEFENDANTS

**MEMORANDUM OPINION & ORDER**

Plaintiff "PGXL" is in the business of personal medicine and develops diagnostic testing kits. In 2012, PGXL began searching for a team to market its tests and after a satisfactory trial period with Defendant Scott Goodman's team, it entered an agreement (the "Agreement"[1]) with an entity denominated as "Essential Molecular Testing Corporation." Goodman signed the Agreement as "Scott Goodman, President and CEO (for EMTC)." On the date of execution, "Essential Molecular Testing Corporation" did not legally exist as a valid registered corporation in any state. Indeed, it has never been incorporated as a business entity in its own right. Due to this deficiency, PGXL now seeks to declare the Agreement void *ab initio* to avoid the consequences of it. The parties have cross-moved for summary judgment on this issue. For the reasons discussed below, the Court finds the Agreement valid.

---

[1] The Agreement was signed and became effective as of August 1, 2012. Its term runs through December 31, 2018, absent termination for cause. DN 6.

I.

The following is relevant background. In December 2011, Goodman formed the Florida LLC "Scott Goodman, LLC" for purposes of conducting "any and all lawful business." Goodman is the LLC's sole member. Over the years, Goodman has renamed his LLC twice, once in September 2012 and again in February 2013. Its current name exists in the annals of Florida's Secretary of State as "Essential Molecular Testing Corporation LLC-PGXL Partners LLC," and it is one of the named defendants in this case. After PGXL filed suit, Goodman registered "Essential Molecular Testing Corp." as a fictitious name for Defendant Essential Molecular Testing Corp, LLC-PGXL Partners, LLC, pursuant to FLA. STAT. § 865.09 (West 2014).

By early 2012, Goodman had a sales force doing business as "Essential Molecular" and/or "Essential Molecular Testing Corp." Scott Goodman, LLC established a bank account with Republic Bank and ordered checks with "Scott Goodman LLC" on the top line and "Essential Molecular Account" on the second. Around April 2012, Goodman requested that his sales force purchase business cards bearing the name "Essential Molecular Testing Corp." and the slogan "Brilliance in DNA Testing." He reimbursed the sales force with the Scott Goodman LLC/Essential Molecular Account checks. By at least April 2012, Goodman had set up an email domain for "@essentialmolecular.com" and he and his sales force used email addresses associated with that domain to correspond with each other and with others.

At some point, Goodman began negotiating with PGXL. His sales force performed work for PGXL in the summer of 2012 and Goodman paid their commissions with the same checks referenced above. Other interim expenses were paid in the same manner. By the end of July 2012, PGXL had decided to enter a multi-year agreement with Goodman's sales force to market

2

its tests. The resulting Agreement refers to Goodman's sales force as "Essential Molecular Testing Corporation" in the first paragraph and above the signature line and "Essential Molecular" or "EMTC" throughout the rest (hereinafter, the Court will refer to the purported entity in the Agreement, i.e., Goodman's sales force that performed work under the Agreement, as "EMTC"). Roland Valdes, a doctor and founding member of PGXL, signed the Agreement as PGXL's "Authorizing Manager" and Goodman signed "Scott Goodman, President and CEO (for EMTC)." By all accounts, EMTC's sales force performed satisfactory work.[2] Over the course of roughly one year, it helped grow PGXL's annual business from $600,000 to $16,000,000. The Agreement requires PGXL to pay EMTC 50% of gross profits from tests ordered through EMTC. Thus, it becomes clear why PGXL seeks to void the Agreement.

A number of noteworthy things happened over the course of the first year of PGXL's and EMTC's relationship. First, in September 2012, Goodman filed the requisite filings with Florida's Secretary of State and changed the name Scott Goodman, LLC to "PGXL Partners, LLC." When PGXL heard of this, it protested that that name was a brand name that belonged to the enterprise between the two entities.[3] Consequently, Goodman accomplished another name change in February 2013, this time to Defendant "Essential Molecular Testing Corp, LLC-PGXL Partners, LLC."[4] Goodman claims he did not inform PGXL of Scott Goodman LLC's name change to PGXL Partners, LLC. Presumably, then, PGXL learned this information from Florida's Secretary of State's public website. When PGXL discussed its desire for Goodman to change the name of PGXL Partners, LLC, it1 did not raise the nonexistence of EMTC.[5] Nor did

---

[2] Since the inception of this litigation, circumstances have changed. Defendants claim PGXL has purported to terminate the Agreement effective June 5, 2014 for cause: EMTC's breach of the Agreement's volume guarantees. DN 48 p. 12-13. Those circumstances are immaterial to the present suit.
[3] DN 11-1.
[4] PGXL did not complain about this lag in time.
[5] DN 11-1.

3

it request PGXL Partners, LLC's name be changed to EMTC, although it is reasonable to infer that PGXL knew the entity whose name was under discussion was the sales force performing its marketing work, otherwise there likely would have been no such discussion.

Second, when it came time for PGXL to pay EMTC's commission in November, Goodman asked PGXL to make payments to the Scott Goodman, LLC bank account. PGXL asked questions and informed Goodman it would only pay EMTC, the party named in the Agreement. Goodman then showed satisfactory proof of the "Essential Molecular Account," and PGXL made payment.[6]

On September 6, 2013, PGXL filed suit requesting, among other things, that the Agreement be declared void *ab initio* due to EMTC's nonexistence. Plaintiff claims that because EMTC did not exist at the time of execution, "there is no meeting of the minds and, consequently, no contract to enforce."[7] Defendants counterclaimed alleging breach of the Agreement's payment terms. In November 2013, this Court denied the Defendants' motion for preliminary injunction on that issue. Since then the parties have filed cross motions for partial summary judgment on the threshold question of whether there is a valid agreement.

II.

A movant is entitled to summary judgment if it demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must decide if "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

---

[6] DN 14.
[7] DN 33, p. 1. Alternatively, PGXL seeks to have the contract declared voidable due on theories of fraud in the inducement. See Counts II and III of the complaint at DN 1.

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251−52 (1986). Here, both parties have moved for summary judgment. The Court will consider each of the parties' arguments in turn.

III.

The threshold question is whether the Agreement is valid and, therefore, enforceable. This question is separate and distinct from who may enforce it and against whom. To focus, as the litigants do, on EMTC's capacity to contract on August 1, 2012 or the consequences of any imperfections in EMTC's relationship with the state of Florida and/or Kentucky is to skip a step. These inquiries do not answer the basic threshold question. First principles of contract law and a look at Kentucky's business statutes provide that answer.

A.

Courts start with the presumption that parties to an agreement intend to create an enforceable obligation, rather than one that will have no legal effect. This is known as the rule of validity. 17B C.J.S. Contracts § 941. The facts and circumstances surrounding the transaction and the terms of the Agreement itself illustrate that PGXL and EMTC intended for the Agreement executed on August 1, 2012 to be binding and enforceable.

Plaintiff takes issue with even considering EMTC a "party to the contract" as of August 1, 2014, asking the existential question, "How can an entity that does not exist enter an agreement? It lacks the capacity to contract." The answer is that all business entities contract through individuals. Goodman signed "for EMTC." If Goodman represented that EMTC already existed as a legally perfected entity and PGXL proves that that fact was material and actually induced the contract, Goodman faces liability on Plaintiff's fraud theories in counts II and III and rescission of the contract could be warranted.[8] But the fact that EMTC did not exist

---

[8] Incidentally, this outcome leads to the same practical effect as would declaring the contract void *ab initio*.

in the annals of Florida's Secretary of State as of August 1, 2012 does not automatically render PGXL's Agreement with EMTC void *ab initio*.

KRS § 275.095 provides that "persons purporting to act as or on behalf of a limited liability company, knowing there has been no organization under this chapter, or who assume to act for a limited liability company without authority to do so, shall be jointly and severally liable for all liabilities created while so acting." *Id.* The Kentucky Business Corporation Act has an analog provision, KRS § 271B.2-040: "All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this chapter, shall be jointly and severally liable for all liabilities created while so acting." These statutes arguably supercede the common law rule of promoter liability. *See Gibson v. Ready Mix Concrete*, 2011 WL 2162686, *4 (Ky. App. 2011) (unpublished) (entertaining this argument about KRS 271B.2-040). They also expressly incorporate many aspects of the law of agency. *See Pannell v. Shannon*, 425 S.W.3d 58, 81 n. 21 (Ky. 2014).

There would be no reason to limit the application of these statutes to persons who purport to act on behalf of a nonexistent entity, no matter where the purported entity is not validly formed. The legislature's expressed intent to impose liability on persons who act "on behalf of" a limited liability entity "knowing there has been no organization [or incorporation] under this chapter" logically extends to the situation where there has been no valid organization anywhere.

In any event, this is not a breach of contract case. The utility of these statutes is to show that the penalty for signing a contract on behalf of a nonexistent entity is a specific one—and it is not that contracts entered in the name of the nonexistent entity are null and void.

B.

Defendants' argument that this case is, at base, a fictitious name case—i.e., that EMTC was just the "doing business as" name for Scott Goodman LLC (now Defendant Essential

Molecular Testing Corp, LLC-PGXL Partners, LLC)—goes more toward *who* may enforce the Agreement rather than whether it is valid. While Goodman has established that an entity he formed, Scott Goodman LLC (now Defendant Essential Molecular Testing Corp, LLC-PGXL Partners, LLC) was doing business under the name "Essential Molecular" and "Essential Molecular Testing Corporation," there are other considerations that affect whether or not Essential Molecular Testing Corp, LLC-PGXL Partners, LLC may enforce the Agreement now. These considerations, yet to be adequately briefed, include (1) the application (if any) of KRS § 14A.9-010 regarding the requirements for foreign entities transacting business in this state to these facts, and (2) whether Defendant Essential Molecular Testing Corp, LLC-PGXL Partners, LLC's registration of the fictitious name "Essential Molecular Testing Corp." after PGXL filed its complaint serves as an effective ratification of Goodman's actions and the Agreement.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment (DN 32) is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for partial summary judgment (DN 28) is SUSTAINED and, therefore, the Agreement is not void *ab initio*.

cc: Counsel of Record